McKinney, J.
delivered the opinion of the court.
This is a bill by husband and wife against the defendant, as administrator of C. Neal, deceased, who was guardian to the wife, for an account; and to obtain payment of the amount of money belonging to the wife, in the hands of said guardian, at his death. The balance found due to the complainants, as appears from the master’s report made in the chancery court, was on the 8th day of October, 1849, one thousand six hundred and ninety dollars and eight cents.
The complainant Eliza, at the time of her intermarriage with the other complainant, which was in 1847, was not quite fifteen years of age.
During the progress of the cause in the chancery court, several of her relatives joined in a petition, praying the chancellor, on account of her tender age and the insolvency of her husband, to make a settlement upon her of whatever amount might be decreed against the defendant in this cause, and which constituted her entire fortune. To said petition, the husband and wife put in a joint answer; and, therein, as might well enough have been expected, the wife, somewhat indignantly, repels the interposition of her friends in her behalf: expresses great confidence in the disposition and ability of her husband to take care of herself and fortune: abandons all claim to a settlement, and urges upon the chancel *199 lor to decree the fund to her husband. The chancellor directed the master to take her examination, apart from her husband. This was done, and the result was, a repetition of the dsiclaimer contained in her answer. And, thereupon, the chancellor refused to make any settlement upon her.
It has become the settled law of courts of equity, that, standing in loco parentis, they will not suffer the husband to obtain possession of the wife’s property, without making a suitable provision for her and her children, unless she being capable of giving consent, do voluntarily waive her right to a settlement, and agree that her property shall go to the husband.
This right attaches not only to her personal property, but likewise to the rents and profits of her real estate. And it is not restricted to the wife merely; the invariable practice is to include a provision for the issue of the marriage, through the instrumentality of the equity of the wife. 2 Story’s Eq., sec. 1406, 1408. And a court of chancery will uphold this equity in all cases where the husband, his creditors, or his assignees have occasion to resort to such court in order to obtain possession of the property; or wherever the court can, in any form, exercise jurisdiction over the subject. 6 Metcalf, 543.
It is immaterial whether the bill be brought by the husband and wife, jointly, to obtain possession of her fortune, or by the wife alone, in the name of her next friend; or by a third person, in her behalf. The result of the cases seems to be, that whenever this right of a married woman is brought before the court, in opposition to the claims of the husband, his creditors, or assignees, it will be acted on, whoever the person applying to the court may be. Clancy, (Am. Ed.) 474; *200 6 Paige, 366; 6 Metcalf, 543, 544. No distinction is allowed, founded upon the mere consideration oí who is the party in the record; the equity is precisely the same in whatever form, or by whomsoever presented. 2 Story’s Eq., sec. 1414.
In respect to the extent of the provision to be made for the wife, no uniform rule can be established. This must depend upon circumstances. The amount of the property, the age, health and condition of the wife; the number of her children, their necessities, and the character, habits, and circumstances of the husband are amongst the considerations to be looked to in the determination, of this matter. The court may, in its discretion give the whole, or any part of the property, to the wife, according to the circumstances and exigences of the case. If the property be not considerable, it might be proper to appropriate the whole of it to her use. 6 Metcalf 544; 2 Kent’s Com., (5th Ed.,) 140; 6 Johns. Ch. Rep., 178, 180.
This equity may, as has been already stated, be waived by the wife. But,,for obvious reasons, the courts have felt it to be incumbent on them to guard, as far as practicable, against an improvident waiver by her of this right. The practice of the English court of chancery seems to be, to take her examination in court, apart from her husband, wherever practicable to do so. And if this be not practicable, by reason of the distance of her residence, to award a commission directed to suitable persons appointed for that purpose; the examination before the commissioners, is to be taken down in writing, signed by the wife, and likewise by the commissioners, who are to certify to the court their execution of the commission. And the signature of the wife *201 to the examination; and also the signatures of the-commissioners to the certificate, must be verified by affidavit. 2 Dan. Ch. Pr., 116.
But, if the wife be not of full age, she is incapable of giving her consent; and, in such case, the court will not take the examination; nor suffer her to waive her equity; but will require the husband, seeking possession of her property, to make a proper settlement upon hez\ Id. 122; 12 Sim. 566.
From the foregoing principles it will be seen, that, in the case under consideration, the chancellor erred in refusing to settle upon the wife, for her separate use, the amount found due to her from the defendant. Being under the age of twenty-one, she was incapable of consenting to a waiver of her right; and her answer to the petition, as also her examination before the master, which was irregular and improperly taken, ought to have been disregarded.
In view ’of the tender age of the- wife, the pecuniary condition of the husband, and the fact that he has a family of children by a previous marriage, we think the interposition of her friends in this.case, was judicious and well-timed, and that the case is a proper one for the settlement of the entire fund. An additional reason for withholding this fund from the husband, arises out of the fact disclosed in the pleadings and proof, that the greater part thereof accrued from the-sale of real estate descended to the wife, situate in-Kentucky, which was sold by. the guardian, prior to-the marriage of his ward, and upon which sale, the-guardian incurred liability, to the purchaser, to refund' the purchase money, in the event the title was not perfected. It is true, some of the witnesses speak of a *202 decree, of some court of Kentucky, made after the sale by the guardian, for the purpose of confirming said sale. But of the validity or effect of such decree, we are unable to judge, as no transcript of the record has been produced. For aught that appears to us, a valid obligation and liability rests upon the estate of the guardian, and we think it reasonable that a lien should be retained on said fund, as indemnity against such liability, until it shall be discharged, as it may be, when the wife shall have attained her majority.
The decree, so far as respects the disposition of the fund, will be reversed; and the cause be remanded to the chancery court, with direction to the chancellor, to invest the principal of the fund, in such manner as may be deemed best, for the sole use and benefit of the wife and the children, subject, however, to the indemnity of the representatives of the deceased guardian .as before indicated.
DECREE.
Be it remembered, that this cause came on to be heard on a former day, and also, on this, the 10th day of January, 1850, before the supreme court of the State of Tennessee, sitting at Nashville, upon the transcript of the record of the chancery court at Gallatin, and argument of counsel, on consideration whereof, it appeared to the court, that this bill was filed by the husband and wife against the defendant, Hassell, as administrator of C. Neal, deceased, who was guardian to the wife, for an account, and to obtain payment of the amount of money belonging to the wife, in, the hands of the guar.dian, at the time of his death. The balance found due the complainants, as appears from the master’s report, *203 in the chancery court, was, on the 8th of October, 1849, one thousand six' hundred and ninety dollars and eight cents. It also appeared that, during the pendency of said suit, in the chancery court, several of the relatives of the complainant Eliza, in consequence of her tender age, (she being only about seventeen years of age,) and the insolvency of her husband, joined in a petition, praying the chancellor to make a settlement upon her of whatever amount might be decreed against the defendant in the cause, and which constituted her entire fortune.
It further appears to the court, from the answer of the complainants to said petition, that she rejected the kind interposition of her ralatives, and urged upon the •chancellor to decree the fund to her husband. It further appeared, that the chancellor directed the master to take her privy examination, apart from her husband, in relation to the settlement of said fund, upon her, and his report, - made in pursuance of said order, was, that she desired said fund to be decreed to her said husband; and the chancellor so decreed, and refused to make the settlement upon her. This court is of the opinion, that the chancellor erred in refusing, under the circumstances presented in this cause, to make a settlement of the fund in controversy, upon the wife, for her separate use; both on account of her tender age, the pecuniary circumstances of the husband, and because it appears that the greater part of said fund accrued from the sale of real estate, descended to the wife, situate in Kentucky, which was sold by the guardian, prior to the marriage of his ward. And upon which sale the guardian incurred liability to the purchaser, to refund the purchase money, in the event the title were not perfected; and *204 that it would be reasonable, that a lien should be retained on said fund, as an indemnity- against such liability, until it shall be discharged, as it may be, when the wife shall have attained her majority. And this court is also of opinion, that said decree, so far as it assumes to confirm the sale made by the guardian, and to divest the title out of the wife and vest the same in the purchaser, is obviously, a nullity.
The decree, therefore, so far as respects the disposition of the fund, is reversed, and the cause remanded back to the chancery court, with directions to the chancellor, to invest the principal of the fund, in such manner as may be deemed best, for the sole use and benefit of the wife and her children, subject to the indemnity of the representatives of the deceased guardian. And it is further ordered by the court, that the cost be paid by the defendant out of the assets of the intestate’s estate in his hands to be administered.
In view of the tender age of the wife, the pecuniary condition of the husband, and the fact, that he has a family of several children by a previous marriage, we think the interposition of her friends, in this case, was judicious and well timed, and that the case is a proper one for the settlement of the entire fund.